**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**DISH NETWORK L.L.C.,**
**ECHOSTAR TECHNOLOGIES L.L.C.,**
**and NAGRASTAR LLC,**

     **Plaintiffs,**

**v.**           **Case No.**

**I.E. ENTERTAINMENT, INC.,**
**LARRY HYMAN,**
**IAN JONES,**
**and ERIC JOHNSON, all individually**
**and d/b/a ABADSS.COM**

     **Defendants.**
_____/

**PLAINTIFFS' ORIGINAL COMPLAINT**

   Plaintiffs DISH Network L.L.C., EchoStar Technologies L.L.C. and NagraStar LLC (collectively "DISH Network") file this complaint against the above-named defendants and state as follows:

**NATURE OF THE ACTION**

   1.  DISH Network provides more than 14 million customers with high quality satellite television programming. DISH Network's customers have access to hundreds of video and audio channels, the most high definition (HD) channels, the most international channels, state-of-the-art interactive TV applications, and award-winning HD and digital video recorder technology. DISH Network provides its service to customers who have been authorized to receive such services after payment of a subscription fee (or in the case of a pay-per-view movie or event, the purchase price) to DISH Network.

1

2.      Defendants are satellite pirates who distribute pirate tools and software that enable consumers to illegally intercept and decrypt DISH Network's pay-television programming without authorization and without payment of a subscription fee to DISH Network. Defendants perform their illegal acts individually and d/b/a ABADSS.COM.

3.      Defendants' conduct violates a variety of federal statutes, including the Digital Millennium Copyright Act and the Communications Act.

4.      DISH Network brings this suit seeking civil impoundment of Defendants' pirate tools, software, and devices and related computers and materials under the impoundment provisions of the Digital Millennium Copyright Act, for a temporary restraining order and preliminary and permanent injunction barring Defendants from trafficking in such devices, for damages and for such other relief as DISH Network proves themselves entitled.

## JURISDICTION AND VENUE

5.      This suit is predicated on violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.* and the Communications Act of 1934, as amended, 47 U.S.C. § 605 *et seq.* Therefore, the Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1331 and 1338.

6.      Venue is proper in this court pursuant to 28 U.S.C. §§ 1391(b)(1) because Defendants reside in this judicial district, 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this judicial district, 1391(b)(3) because Defendants may be found in this judicial district and are subject to *in personam* jurisdiction here, and 1400(a) because this case asserts claims relating to the protection of copyrights.

7.      This Court has personal jurisdiction over Defendants, who reside in and conduct business within Florida.

## PARTIES[1]

8.      Plaintiff DISH Network L.L.C. is a Colorado limited liability company with its principal place of business located at 9601 South Meridian Blvd., Englewood, Colorado 80112, Arapahoe County.   Plaintiff DISH Network L.L.C.'s sole member is DISH DBS Corporation, a Colorado Corporation, which in turn is an indirect wholly owned subsidiary of DISH Network Corporation, a Nevada Corporation.  DISH Network Corporation is publicly owned and traded on the NASDAQ national market under the symbol "DISH."

9.      Plaintiff EchoStar Technologies L.L.C. is a Texas limited liability company with its principal place of business located at 90 Inverness Circle East, Englewood, Colorado 80112, Arapahoe County.   Plaintiff EchoStar Technologies L.L.C.'s sole member is EchoStar Corporation, a Nevada Corporation.  EchoStar Corporation is publicly owned and traded on the NASDAQ national market under the symbol "SATS."

10.      Plaintiff NagraStar LLC is a Colorado limited liability company with its principal place of business located at 90 Inverness Circle East, Englewood, Colorado 80112, Arapahoe County.   NagraStar is a joint venture between EchoStar Corporation and the Kudelski Group, a group of companies headquartered in Switzerland.  Plaintiff NagraStar LLC's sole members are EchoStar Corporation and Kudelski SA.  EchoStar Corporation is identified in paragraph 9 above.  Kudelski SA has its principal place of business at 22-24, Route de Genève, 1033 Cheseaux, Switzerland and is listed on the SIX Swiss Exchange under the symbol "KUD."

11.      Defendant I.E. Entertainment, Inc. is a Florida corporation with its principal place of business located at 106 S. Tampania Ave., Tampa, Florida 33609.  The registered agent for

---

[1] DISH Network's allegations regarding the whereabouts and wrongful conduct of Defendants are based upon the investigation completed to date, and with the reasonable belief that further investigation and discovery in this action will lead to additional factual support.  DISH Network, therefore, expressly reserves their right to supplement or amend their claims and the basis for those claims, with leave of court if necessary, as additional investigation and discovery is conducted.

I.E. Entertainment, Inc. is Larry Hyman, 106 S. Tampania Ave., Tampa, Florida 33609.  I.E. Entertainment, Inc. registered, owns, and operates the website www.abadss.com.

12.    Defendant Larry Hyman is an individual believed to be residing in Tampa, Florida, Hillsborough County.  Larry Hyman is the current President and Vice President of I.E. Entertainment, Inc.  Larry Hyman operates or is responsible for the operation of the website www.abadss.com.

13.    Defendant Ian Jones is an individual believed to be residing in Sanford, Florida, Seminole County.  Ian Jones is the former President and Vice President of I.E. Entertainment, Inc.  Ian Jones registered and has operated or has been responsible for the operation of the website www.abadss.com.

14.    Defendant Eric Johnson is an individual believed to be residing in Orlando, Florida, Orange County.  Eric Johnson is the former Vice President and Registered Agent of I.E. Entertainment, Inc.  Eric Johnson has operated or has been responsible for the operation of the website www.abadss.com.

### DISH NETWORK SATELLITE TELEVISION PROGRAMMING

15.    DISH Network L.L.C. is a multi-channel video provider that delivers video, audio, and data services to customers throughout the United States, Puerto Rico, and the U.S. Virgin Islands via a direct broadcast satellite system.

16.    DISH Network uses high-powered satellites to broadcast, among other things, movies, sports, and general entertainment services to consumers who have been authorized to receive such services after payment of a subscription fee or, in the case of a pay-per-view movie or event, the purchase price.

17.    DISH Network contracts for and purchases the distribution rights for most of the programming broadcast on the DISH Network platform from providers such as network

4

affiliates, motion picture distributors, pay and specialty broadcasters, cable networks, sports leagues, and other holders of programming rights.

18.     The works broadcast on the DISH Network platform are copyrighted.  DISH Network has the authority of the copyright holders to protect these works from unauthorized reception and viewing.

19.     DISH Network programming is digitized, compressed, and scrambled prior to being transmitted to multiple satellites located in geo-synchronous orbit above Earth.  The satellites, which have relatively fixed footprints covering the United States and parts of Canada, Mexico, and the Caribbean, relay the encrypted signal back down to Earth where it can be received by DISH Network subscribers that have the necessary equipment.

20.     A DISH Network satellite television system consists of a compatible dish antenna, receiver, smart card which in some instances is internalized in the receiver, television, and cabling to connect the various components.  EchoStar Technologies L.L.C. provides receivers, dish antenna, and other digital equipment for the DISH Network system.  Smart cards and other proprietary security technologies that form a conditional access system are supplied by NagraStar LLC.

21.     The NagraStar conditional access system performs two interrelated functions: first, subscriber rights management, which allows DISH Network to "turn on" and "turn off" programming a customer has ordered, cancelled, or changed; and second, scrambling, which prevents unauthorized viewing of DISH Network programming.

22.     An integral component of the NagraStar conditional access system is a smart card containing a secure embedded microprocessor that functions as a security computer.  The microprocessor contains a ROM segment of memory that provides instructions and commands to the smart card in the everyday operation of the NagraStar security system.  The ROM segment reads from data stored within the microprocessor's EEPROM to perform its calculation and

operation functions.  The EEPROM segment also stores a special kind of data called decryption keys.

23.     To put the NagraStar smart card in context, the EchoStar Technologies receiver processes an incoming satellite signal by locating an encrypted part of the transmission known as the entitlement control message, and then forwards that message to the smart card.  Provided the subscriber is tuned to a channel he is authorized to watch, the smart card uses its decryption keys to unlock the message, uncovering a control word.  The control word is sent back to the receiver in order to decrypt the satellite signal.

24.     Together, the EchoStar Technologies receiver and NagraStar smart card convert DISH Network's encrypted satellite broadcasts into viewable programming that can be displayed on the attached television of a DISH Network subscriber.  Each receiver and smart card is assigned a unique serial number that is used by DISH Network when activating the equipment, and to ensure the equipment only decrypts programming that the customer is authorized to receive as part of his subscription package and pay-per-view purchases.

## PIRACY OF DISH NETWORK PROGRAMMING

25.     Pirates developed a way to circumvent DISH Network's security system and intercept DISH Network programming using unauthorized receivers.  This form of piracy is accomplished by loading software that contains the proprietary data and keys to DISH Network's security system onto circuit chips within the unauthorized receiver, so as to mimic a legitimate NagraStar smart card.  The process of loading piracy software is referred to as "flashing" the unauthorized receiver and can be completed by even a layperson in minutes.  Piracy software is freely available on a number of websites including www.abadss.com.

26.     Satellite piracy has been historically a tedious endeavor because the unauthorized receiving technology needed to be manually and routinely updated to account for and overcome

changes to DISH Network's security system, namely electronic counter-measures (or "ECMs") transmitted in the satellite data stream. The countermeasures have multiple effects, one being to change the decryption keys required to access proprietary DISH Network control words.

27.    One form of satellite piracy is known as "control word sharing," also called "internet key sharing" or more simply "IKS." IKS eliminates the need to manually update piracy software in the unauthorized receiver.

28.    IKS involves the use of an unauthorized receiver, piracy software, and an internet connection. Piracy software is loaded onto the receiver and the end-user connects the receiver to the internet via a built-in Ethernet port or add-on dongle. The internet connection serves two piracy-related purposes: first, it automatically updates piracy software on the receiver when the user responds "yes" to an on-screen menu prompt; and second, the internet connection contacts a computer server which in turn provides the necessary codes or control words needed to decrypt or descramble the encrypted DISH Network programming.

29.    The pirate computer server, called an "IKS server," is typically assembled by combining several DISH Network or EchoStar satellite receivers and embedded NagraStar smart cards and connecting those receivers to a computer server. The person operating the server will typically activate a single paid subscription for each of the EchoStar satellite receivers and, utilizing pirate software and technology, will monitor the receivers and extract the secret descrambling codes or "control words" from these paid accounts. The pirate computer server will then send these codes out over the internet to end-users whose computers and receivers are programmed to receive the descrambling control words and will utilize those control words to descramble DISH Network programming without a separate, authorized subscription or payment of a subscription fee to DISH Network.

7

## **DEFENDANTS' WRONGFUL CONDUCT**

30.     Defendants own and operate, or are responsible for operating, the website www.abadss.com.  Defendants boast that they acquired www.abadss.com in 2005 and that it is one of the fastest growing sites in the satellite piracy industry with over 33,000 members and a 62,000 Alexa Ranking.

31.     Defendants are involved in and are responsible for trafficking and distributing numerous versions of pirate tools and software through their website www.abadss.com. Defendants admit that www.abadss.com provides help to members that use satellite receivers to get free satellite television, and that members can post questions in the forum and download tools and software.

32.     Defendants' pirate tools and software are primarily designed to allow end-users to circumvent the technological measures that DISH Network utilizes to protect access to copyrighted works distributed by DISH Network.   This circumvention occurs without authorization or permission from DISH Network.

33.     Defendants' pirate tools and software enable end-users to circumvent DISH Network's security system and receive DISH Network programming without authorization. Defendants' pirate tools and software do not have any legitimate purpose or use. The only use for Defendants' pirate tools and software is to circumvent DISH Network's security system.

34.     Defendants' pirate tools and software are marketed by Defendants, and others known to be acting in concert, for use in circumventing DISH Network's security system and receiving DISH Network programming without authorization.

35.     Defendants' distribution of pirate tools and software has resulted in Defendants' commercial advantage or private financial gain in the form of advertising revenue related to

8

www.abadss.com and Defendants' sale of subscriptions or memberships to www.abadss.com. Defendants' acknowledge that www.abadss.com generates revenue through subscriptions and by selling advertising space.

## CLAIMS FOR RELIEF

## COUNT 1

**Trafficking in Circumvention Devices in Violation of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201(a)(2) and 1201(b)(1)**

36.     DISH Network incorporates the preceding paragraphs as if set forth herein.

37.     Defendants were and are offering to the public, providing, or otherwise trafficking in pirate tools and software in violation of 17 U.S.C. §§ 1201(a)(2) and 1201(b)(1).

38.     Defendants' pirate tools and software are primarily designed and produced for the purpose of circumventing DISH Network's security system; have no commercially significant purpose or use other than to circumvent DISH Network's security system; and are marketed by Defendants and others known to be acting in concert for use in circumventing DISH Network's security system.

39.     DISH Network's security system is a technological measure that effectively controls access to, copying, and distribution of copyrighted works.  Defendants' actions that constitute violations of 17 U.S.C. §§ 1201(a)(2) and 1201(b)(1) were  performed without permission, authorization, or consent of DISH Network or any owner of copyrighted programming broadcast on the DISH Network platform.

40.     Defendants violated 17 U.S.C. §§ 1201(a)(2) and 1201(b)(1) willfully and for purposes of commercial advantage or private financial gain.

41.     Defendants knew or should have known their actions were and are illegal and prohibited.  Such violations have and will continue to cause damage to DISH Network in an amount to be proven at trial.  Unless restrained and enjoined by the Court, Defendants will continue to violate 17 U.S.C. §§ 1201(a)(2) and 1201(b)(1).

## COUNT 2

### Distributing Signal Theft Devices in Violation of the Communications Act, 47 U.S.C. § 605(e)(4)

42.     DISH Network incorporates the preceding paragraphs as if set forth herein.

43.     Defendants were and are selling or otherwise distributing pirate tools and software in violation of 47 U.S.C. § 605(e)(4).

44.     Defendants' pirate tools and software are primarily of assistance in the unauthorized decryption of DISH Network's satellite transmissions of television programming.

45.     Defendants violated 47 U.S.C. § 605(e)(4) willfully and for the purpose of commercial advantage or private financial gain.

46.     Defendants intended for their pirate tools and software to be used in intercepting DISH Network programming, or knew or should have known pirate tools and software are primarily used for this purpose, and therefore are illegal and prohibited.  Such violations have and will continue to cause damage to DISH Network in an amount to be proven at trial.  Unless restrained and enjoined by the Court, Defendants will continue to violate 47 U.S.C. § 605(e)(4).

## PRAYER FOR RELIEF

WHEREFORE, DISH Network seeks judgment against Defendants as follows:

A.  For a grant of permanent injunctive relief restraining and enjoining Defendants, and their employees, agents, representatives, attorneys, and all persons acting or claiming to act

10

on their behalf or under their direction or authority, and all persons acting in concert or in participation with them, from:

1)      manufacturing, offering to the public, providing, or otherwise trafficking in any pirate tools, software, receivers, or any other device, component, or part thereof that:

a)      is primarily designed or produced for the purpose of circumventing DISH Network's security system or any other technological measure adopted by DISH Network that controls access to, copying, or distribution of copyrighted works on the DISH Network platform;

b)      has only a limited commercially significant purpose or use other than to circumvent DISH Network's security system or any other technological measure adopted by DISH Network that controls access to, copying, or distribution of copyrighted works on the DISH Network platform;

c)      is marketed for use in circumventing DISH Network's security system or any other technological measure adopted by DISH Network that controls access to, copying, or distribution of copyrighted works on the DISH Network platform;

2)      manufacturing, assembling, modifying, selling, or distributing pirate tools, software, receivers, or any other device knowing or having reason to know that such device is primarily of assistance in the unauthorized decryption of direct-to-home satellite services;

3)      receiving or assisting others in receiving without authorization, or otherwise intercepting or procuring others to intercept, DISH Network's satellite transmissions of television programming;

B.      For an order impounding all pirate tools, software, receivers, and other devices, components, or parts thereof in the custody or control of Defendants that the Court has reasonable cause to believe were involved in a violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201, or the Communications Act, 47 U.S.C. § 605;

C.     For an order directing Defendants to preserve all records, in any form including electronic form, that evidence, refer, or relate to pirate tools, software, receivers, or other devices used in satellite television piracy, including any manufacturers, exporters, importers, dealers, or purchasers of such devices, or persons involved in operating an IKS server or receiving control words from same;

D.     For an order freezing the domain name www.abadss.com and transferring that domain name to DISH Network;

E.     Award DISH Network the greater of their actual damages together with any profits made by Defendants that are attributable to the violations alleged herein, or statutory damages in the amount of up to $2,500 for each violation of 17 U.S.C. §§ 1201(a)(2) and 1201(b)(1), pursuant to 17 U.S.C. §§ 1203(c)(2) and 1203(c)(3)(A);

F.     Award DISH Network the greater of their actual damages together with any profits made by Defendants that are attributable to the violations alleged herein, or statutory damages in the amount of up to $100,000 for each violation of 47 U.S.C. § 605(e)(4), pursuant to 47 U.S.C. § 605(e)(3)(C)(i);

G.     For an award of DISH Network's costs, attorneys' fees, and investigative expenses pursuant to 17 U.S.C. § 1203(b)(4)-(5) and 47 U.S.C. § 605(e)(3)(B)(iii);

H.     For a full and accurate accounting of all profits and other benefits received by Defendants as a result of the wrongful conduct described herein;

I.     For pre- and post-judgment interest on all damages, from the earliest date permitted by law at the maximum rate permitted by law;

J.     For such additional relief as the Court deems just and equitable.

DATED:  February 15, 2011                    Respectfully submitted,


                                             _s/ James A. Boatman, Jr.__
                                             James A. Boatman, Jr.
                                             jab@boatman-law.com
                                             Florida Bar No. 0130184
                                             **THE BOATMAN LAW FIRM PA**
                                             1415 Panther Lane
                                             Suite 340
                                             Naples, FL 34109
                                             Telephone: (239) 591-6757
                                             Facsimile: (239) 236-0376

                                             Chad M. Hagan (*pro hac vice* to be filed)
                                             chad.hagan@hnbllc.com
                                             Joseph H. Boyle (*pro hac vice* to be filed)
                                             joe.boyle@hnbllc.com
                                             **HAGAN NOLL & BOYLE LLC**
                                             Two Memorial City Plaza
                                             820 Gessner, Suite 940
                                             Houston, Texas 77024
                                             Telephone: (713) 343-0478
                                             Facsimile: (713) 758-0146

                                             Attorneys for Plaintiffs